| | |
|---|---|
| -UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | |
| OLGA IEFIMOVA and ARTUR KILMOV,<br><br>      Plaintiffs,<br> -against-<br><br>STUDIO 34 DANCE, INC (DBA FRED ASTAIRE DANCE STUDIO) and TIMOFEY SHALNEV    Defendants. | **COMPLAINT**<br>Index No.:<br>23-1906 |

### COMPLAINT AND DEMAND FOR A JURY TRIAL

Plaintiffs OLGA IEFIMOVA and ARTUR KILMOV (hereinafter referred to as "Plaintiffs") by and through their attorney, SMITH HOKE, PLLC as and for this Verified Complaint against Defendants, STUDIO 34 DANCE, INC (DBA FRED ESTAIRE DANCE STUDIO) and TIMOFEY SHALNEV alleges as follows:

### PARTIES

1. Plaintiff OLFA IEFIMOVA is an individual who is domiciled in Palm Beach County, Florida.

2. Plaintiff ARTUR KILMOV is an individual who is domiciled in Palm Beach County, Florida.

3. Defendant STUDIO 34 DANCE, INC (hereinafter "Studio 34") is a dance studio operated in New York, New York, doing business as Fred Astaire Dance Studio, and a franchise location of Fads USA, Inc. Services.

4. Upon information and belief, Defendant TIMOFEY SHALNEV is an individual domiciled in New York County, New York, and the owner / operator of STUDIO 34 DANCE, INC.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this matter through diversity jurisdiction, along with supplemental jurisdiction over the state law claims. The parties are domiciled in different states, and the matter in controversy exceeds $75,000.

6. Plaintiffs are domiciled in Florida, while Defendant Shalnev is domiciled in New York, and Studio 34 is operated in New York.

7. The court has personal jurisdiction over the Defendants, as Mr. Shalnev resides in New York and transacts business in New York and the causes of action arise from the same. Studio 34 is located in New York and transacts business in New York.

8. Venue is proper in the Southern District of New York because Mr. Shalnev and Studio 34 reside and operate in the district, and employed the Plaintiffs in the district.

## FACTS

11. In February of 2015, Plaintiffs immigrated from the Ukraine to Albany, New York, and began teaching ballroom dance classes.

12. A friend introduced them to Mr. Shalnev, who owned and operated Studio 34 in New York City. They spoke on the phone, and in June of 2018, Mr. Shalnev offered them employment as dance instructors at his studio if they moved to New York City.

13. Mr. Shalnev presented Mr. Kilmov and Ms. Iefimova with the Employment Agreement, which they signed in June of 2018.

14. The contract stated that the base salary was $20 per hour, plus "appropriate commissions and financial considerations per the Employee Manual."

15. The contract stated that the employee was expected to achieve sales quotas as outlined in

the Employee Manual, and that the employee would get raises to the base per hour rate based on certification and quota achievements, as outlined in the Employee Manual.

16. Additionally, the contract promised that "[o]ther salary and reimbursement considerations are outlined in the Employee Manual."

17. Ms. Iefomova and Mr. Kilmov were then presented with Amended Employment Agreements in November of 2018. The Amended Employment Agreements stated that the "Employer hereby agrees to pay Employee a guaranteed annual salary of $62,000.00." Attached as **EXHIBIT A** is a true and correct copy of the Amended Employment Agreements.

18. The Amended Employment Agreements also stated that the employee was expected to "achieve and maintain sales quotas as outlined in the Employee Manual. Other salary and reimbursement considerations are outlined in the Employee Manual."

19. Neither Plaintiff was ever shown a copy of an Employee Manual.

20. Besides the contracts, Plaintiffs were not given any other notices upon hiring in accordance with Federal or State law.

21. Ms. Iefomova and Mr. Kilmov started working for Defendants on January 1, 2019.

22. Plaintiffs successfully engaged in work for Defendants, signing up prospective students, teaching dancing lessons, coaching their students for competitions, and performing in competitions and expositions on the studio's behalf, which served as advertising for the studio.

23. Plaintiffs' contract stated that they were expected to work from 1:30 to 9:30 five days a week. They did so, at a minimum. They often worked longer hours daily. For example, on most Mondays, they were required to arrive at 10:45a.m. for an unpaid

training session and an unpaid staff meeting. They were expected to meet with potential clients to convince them to sign up for dance lessons. Those meetings also happened outside of the time they were required to be in the studio.

24. They were also required to spend weekends at competitions several times a year. They were required to perform, in order to bring more business to the studio, support their students on the dance floor, practice with their students before their dances, and also host and entertain their students during downtime during the weekend.

25. Plaintiffs were not paid the promised base salary. They were not paid the bonuses, competition pay, and overtime as promised or required by law.

26. In 2019, Mr. Kilmov earned $29,269.00 in wages from Studio 34. In 2020, he earned $25,287.00. In 2021, he worked from January through April, and earned $17,205.00.

27. In 2019, Ms. Iefmova earned $25,464.00. In 2020, she earned $22,825.00. In 2021, she worked from January through April, and earned $13,645.00.

28. Plaintiffs were not paid overtime when they worked over forty hours a week.

29. The Plaintiffs received paystubs with their paychecks, but the paystubs did not include any information about the hours the paystub covered and the rate of pay. It was unclear whether the paystub covered their regular salary, bonuses, or commissions. If they did earn commissions, Plaintiffs were given no records about which sales earned a commission, and how much each sale earned in commission.

30. Plaintiffs asked for clarification for what they were being paid for, whether they were earning bonuses or commissions, what deductions were made from their paychecks, and how they were being compensated for competitions and overtime work, but Mr. Shalnev refused to explain how their compensation was calculated.

31. Mr. Shalnev was in charge of the day-to-day operations of the Studio. He hired and fired all employees, determined rates of pay, negotiated contracts, recruited dance instructors, instituted a dress code, made and enforced the schedule, assigned clients to specific instructors, conducted instructor training and staff meetings weekly, kept all business records, and handled all aspects of payroll. Studio 34 and Mr. Shalnev were joint employers of the Plaintiffs.

32. Plaintiffs initially had a work visa that allowed them to work in America, but it expired. They wished to apply for an o-1 visa, but the process was expensive.

33. In 2018, Mr. Shalev suggested to the Plaintiffs that they take out a loan from Studio 34 to pay for their work visa application. He retained his attorney to prepare the visa application. He told them that he would pay for the attorney, and the Plaintiffs could pay him back through deductions to their paychecks.

34. Mr. Shalev signed the loan agreement on behalf of Studio 34, and the Plaintiffs agreed to pay back $5,260 for legal fees and the processing of a new work visa. The loan agreement stated that there would be weekly deductions from the Plaintiff's paychecks, but did not did not state how much the weekly deductions were to be, or how long it would take to pay back the loan. They never received documentation about how much the attorney was charging for the visa application.

35. Mr. Shalnev took payments out of each paycheck to repay this loan. The amounts taken out from the paychecks varied from $0 to $750. The Plaintiffs had no control over the amount that was deducted.

36. In 2021, the Plaintiff's applied for their green cards. Mr. Shalnev again stated that he would loan them the money for the attorney, and he would take deductions out of their

paychecks.

37. The parties signed another loan agreement for the green card application for $7,650. The loan agreement did not state the purpose of the loan, but stated that money would be taken out of Ms. Iefimova's paycheck for two years. The loan agreement also stated that $4,381, which was still due on the 2018 loan, would be taken out of Mr. Kilmov's "event participation pay" at a rate "equal but not limited to 30%."

38. Mr. Shalnev took payments out of each paycheck to repay this loan.

39. The Plaintiffs' paid back the entire loan on April 4, 2022, ahead of the schedule stated on the loan agreement.

40. Plaintiffs complained about the fact that they were required to come in before the studio opened, unpaid, and were not paid all of the compensation that was promised, and that their paystubs did not inform them what they were being paid for, but Mr. Shalnev never remedied the problems.

## AS AND FOR A FIRST CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAW §191

41. Plaintiff repeats and realleges all prior allegations as if fully set forth below.

42. New York Labor Law §191 requires that all employees be paid the wages earned in accordance with the agreed terms of employment.

43. Plaintiff was not paid for all of their labor in accordance with the agreed terms of employment.

44. Plaintiffs were promised $62,000 a year, plus bonuses and competition pay.

45. In 2019, Ms. Iefmova earned $25,464.00. In 2020, she earned $22,825.00. In 2021, she earned $13,645.00 after working January through April of that year.

46. In 2019, Mr. Kilmov earned $29,269.00 in wages from Studio 34. In 2020, he earned $25,287.00. In 2021, he earned $17,205.00 after working January through April of that year.

47. As a result of the above-referenced violations of New York Law, the Plaintiff is entitled to recover damages consistent with New York Labor Law §198, including the full amount of the underpayment, attorney's fees, prejudgment interest, and liquidated damages equal to three hundred percent of the total amount of wages underpaid for the Defendants' willful conduct.

48. Additionally, New York Labor Law §191(c) states that commissions are to be paid in accordance with the agreed terms of employment, and that, upon request, employers are to furnish the employee with a statement of earnings paid or due and unpaid. All commission agreements shall be reduced to writing, signed by both parties, and kept on file for not less than three years. Such writing must include a description of how wages, salary, commissions, and all other monies earned shall be calculated. The failure of the employer to produce such written terms of employment gives rise to the presumption that the terms of employment that the employee has presented are the agreed terms of employment.

49. The parties' employment contract stated that they would be entitled to bonuses and commissions based on their sales figures.

50. The Plaintiffs were never given an explanation of how these bonuses and sales quota commissions were calculated. They never signed any paper laying out such calculations. They were never given an Employee Manual that laid out the commission

terms. They requested information about how bonuses and commissions were calculated, but they never received any information.

51. As a result of the above-referenced violations of New York Law, the Plaintiff is entitled to recover damages consistent with New York Labor Law §198(1-a), including the full amount of the underpayment, attorney's fees, prejudgment interest, and liquidated damages, as the Defendants had no good faith basis to believe that their underpayment of wages was in compliance with the law.

### AS AND FOR A SECOND CAUSE OF ACTION
### VIOLATION OF NEW YORK LABOR LAW §195

52. Plaintiffs repeat and reallege all prior allegations as if fully set forth below.

53. New York Labor Law §195(1) mandates that, at the time of hiring, all employers disclose in writing, in English and the language identified by the employee as their primary language, the manner in which an employee is compensated and the employee's rate of pay and regular pay day, along with hourly rate of pay and overtime rate of pay, among other things. The employer must obtain a written acknowledgment from each employee of receipt of this notice, and keep such receipt for six years.

54. Such written notice was never given to the Plaintiffs.

55. New York Labor Law §195(3) requires employers furnish each employee with a statement with every payment of wages, listing, among other things, gross wages, deductions and net wages, an, upon the request of the employee, an explanation of who such wages were computed.

56. While Defendants did provide Plaintiffs with paystubs, the paystubs did not comport with the statute. The paystubs did not include information on the hours worked or basis or rate of pay. The Plaintiffs were unsure whether the payment was for their regular hours

worked or for commissions. The Plaintiffs were not given any records indicating which sales earned commissions and how much money they earned on each sale.

57. New York Labor Law §195(4) requires employers to establish, maintain, and preserve for six years true and accurate payroll records, including the regular rate of pay, the overtime rate of pay, deductions, the number of regular hours worked, and the number of overtime hours worked.

58. The Defendant failed to maintain such records.

59. When the Plaintiffs asked for an explanation of how their compensation was calculated, what deductions were made, and whether their paystubs included bonuses or commissions, Mr. Shalnev refused to give such explanation or written records of such calculations.

60. The Defendant routinely and customarily violated provisions of the New York Labor Law by refusing to provide Plaintiff with information regarding the terms and conditions of his employment. Said conduct was willful.

61. As a result of the above-referenced violations of New York Law, the Plaintiffs are entitled to recover damages consistent with New York Labor Law §198(1-b) for violations of New York Labor Law §195(1), including fines up to $5,000, costs and attorney's fees.

62. Plaintiffs are also entitled to recover damages consistent with New York Labor Law §198(1-d) for violations of New York Labor Law §195(3), including fines up to $5,000, costs and attorney's fees.

**AS AND FOR A THIRD CAUSE OF ACTION**
**VIOLATION OF NEW YORK LABOR LAW §193 and 12 NYCRR §142-2.10**

63. Under New York Labor Law §193, no employer shall make any deduction from the wages of an employee, unless they are expressly authorized in writing by the employee, and that such authorization is only given following receipt by the employee of written notice of all terms and conditions of the payment and the details of the manner in which deductions will be made. There are only fourteen types of deductions that an employer is authorized to deduct from an employee's pay.  Such deductions include insurance premiums, pensions, and charitable contributions.  Deductions from paychecks for personal loans are not authorized by the statute.

64. In 2018, Mr. Shalev suggested to the Plaintiffs that they take out a loan from the business in order to pay for their work visa application.  The Plaintiffs each agreed to pay back $5,260 for legal fees and the processing of a new work visa.

65. Mr. Shalnev took payments out of each paycheck to repay this loan.  He kept handwritten notes on the deductions, but Plaintiffs were not given receipts documenting the deductions.  The amounts taken out from the paychecks varied from week to week. The Plaintiffs had no control over the amount that was deducted.

66. In 2021, the parties signed another loan agreement, for $7,650.

67. Again, Mr. Shalnev took payments out of each paycheck to repay this loan.  The deductions were not officially calculated within the paystub.  Mr. Shalnev simply took money out of the paychecks.  He kept handwritten notes, but Plaintiffs were not given receipts of the deductions or the loan balance.

68. These deductions violated New York Labor Law §193, as a personal loan is not one of the enumerated categories of deductions that an employer is allowed to take out of a paycheck.  Additionally, the terms of the deductions from the paycheck were not

detailed in writing.

### AS AND FOR A FOURTH CAUSE OF ACTION
### VIOLATION OF NEW YORK LABOR LAW §652

69. Plaintiff repeats and realleges all prior allegations as if fully set forth below.

70. Plaintiff was required to work a minimum of 40 hours a week.  They worked more than that weekly, however, including unpaid meetings with potential clients, trainings, and staff meetings, and unpaid work during competitions.

71. In 2019, Ms. Iefmova earned $25,464.00.  In 2020, she earned $22,825.00.  In 2021, she earned $13,645.00 after working January through April of that year.

72. Even if Ms. Iefmova only worked 40 hours a week, she made far less than minimum wage.

73. In 2019, Mr. Kilmov earned $29,269.00 in wages from Studio 34.  In 2020, he earned $25,287.00.  In 2021, he earned $17,205.00 after working January through April of that year.

74. Even if Mr. Kilmov only worked 40 hours a week, he made far less than minimum wage.

75. The Defendants' refusal to pay the Plaintiffs a minimum wage for their labor was willful and in bad faith.

76. As a result of the above-referenced violations of New York Law, the Plaintiffs are entitled to recover damages consistent with New York Labor Law §663, including attorney's fees, costs, and liquidated damages for the Defendant's willful conduct.

### AS AND FOR A FIFTH CAUSE OF ACTION
### VIOLATION OF 12 N.Y.C.R.R. 142-2.2

77. Plaintiffs repeats and realleges all prior allegations as if fully set forth below.

78. Plaintiffs were expected to work more than forty hours a week, and were required to be at unpaid trainings, staff meetings, and meetings with potential clients. Additionally, they were required to entertain and coach students and perform themselves during competitions.

79. In New York, employers are required to pay employees an overtime rate of one and one-half times the employee's regular rate for those hours worked in excess of forty hours a week.

80. Plaintiff was not paid the required overtime rate for those hours worked in excess of forty hours a week.

### AS AND FOR AN SIXTH CAUSE OF ACTION AGAINST DEFENDANT: BREACH OF CONTRACT

81. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

82. Plaintiffs and Defendants entered into contracts for employment, which established compensation parameters governing their employment.

83. The Plaintiffs contracted for a guaranteed annual salary of $62,000.00, plus commissions and bonuses based on sales figures and additional pay for competitions.

84. The Defendants breached said contracts when they failed to pay all earned salary, bonuses, commissions, and additional pay for competitions.

85. As a result of Defendants' breach, Plaintiffs suffered damages resulting from unpaid wages, bonuses, commissions, and overtime wages.

86. As a result of Defendants' conduct, Plaintiff has sustained damages in excess of the amount necessary to sustain jurisdiction.

**AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST DEFENDANT:**
**UNJUST ENRICHMENT**

87. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

88. Plaintiffs worked for Defendants without being paid all that was owed for their labor.

89. Plaintiffs successfully engaged in work for Defendants, teaching dancing lessons, coaching their students, and advertising for the studio.

90. Defendants were financially enriched as a result of Plaintiffs' efforts.

91. Defendants refused to pay Plaintiffs all salary and overtime pay earned in the performance of their duties.

92. Defendants retained this financial benefit conferred by Plaintiffs in his role as employees, and in return offered her inadequate compensation or none at all.

93. As such, Defendants were unjustly enriched in the amount of unpaid salary and overtime.

**AS AND FOR A EIGHTH CAUSE OF ACTION**
**PROMISSORY ESTOPPEL**

94. Plaintiffs repeats and realleges all prior allegations as if fully set forth below.

95. Plaintiffs suffered damages as a result of Defendants' broken promises in an amount in excess of the monetary jurisdictional threshold of all lower Courts.

**JURY DEMAND**

96. Plaintiffs demand a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**WHEREFORE** Plaintiffs demand judgment against the Defendants on the causes of action arising under Federal Law and New York State Law pursuant to the remedies provided within, along with damages, liquidated damages, attorney's fees, punitive damages, costs and disbursements of this action and such other, further and different relief as to the Court seems just and proper.

Dated: March 6, 2023
       Albany, New York

                                                     */s/ Meredith A. Moriarty*
Meredith A. Moriarty, Esq.
**SMITH HOKE, PLLC**
Attorneys for Plaintiff
16 Wade Road
Latham, NY 12110
(518) 489-5600 (Telephone)
(518) 641-1286 (Facsimile)
mmoriarty@smithhoke.com